UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DENNIS BILLUPS | * | CIVIL ACTION NO. 23-2103 |
| | * | |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE |
| THOMAS VILSACK, SECRETARY OF | * | JANIS VAN MEERVELD |
| THE DEPARTMENT OF | * | |
| AGRICULTURE | * | |
| | * | |
| ************************************ | * | |

ORDER AND REASONS

This is a disability discrimination in employment lawsuit. Before the Court are the plaintiff's Motion for Summary Judgment and the defendant's Motion for Summary Judgment. (Rec. Docs. 25, 26). Plaintiff has failed to exhaust administrative remedies for any claim of constructive discharge, disparate treatment, or adverse employment action arising out of a two week period of leave without pay. Further, even if plaintiff had been a qualified individual with a reasonable accommodation available to him, he abandoned the interactive process and as a result, his employer cannot be held liable for failing to grant a reasonable accommodation. For the following reasons, defendant's Motion is GRANTED and plaintiff's Motion is DENIED.

Background

During the relevant period, plaintiff Dennis Billups was employed as a Supervisory Human Resources Specialist, GS-201-14, Branch Chief at the United States Department of Agriculture ("USDA") National Finance Center in New Orleans.[1] Shandon Davis, Human Resources Officer, was Billups' first-line supervisor.[2] At the time of Billups' retirement in December 2019, he had completed over 30 years of federal service.[3]

---

[1] ECF No. 26-4, at 1.
[2] ECF No. 29-1, at 2.
[3] ECF No. 26-4, at 1.

1

Although the alleged discrimination occurred in 2019, it may be relevant to the feasibility of accommodations to note that Billups worked for approximately nine months in a telework status at an emergency work location in 2017 while he was deployed to Bossier City, Louisiana, as part of USDA's Continuity of Operations Plan (COOP).[4] According to Billups, he effectively performed all essential functions of his position during this deployment period while teleworking.[5] In February 2018, Billups was issued and agreed to a "USDA Telework Agreement" that approved him for "situational" telework but specifically disapproved him for "regularly scheduled" telework.[6]

In December 2018, Billups began requesting sick leave due to his medical condition.[7] Billups submitted notes from his physician, Dr. Whitehead, dated January 28, 2019, and February 6, 2019, to his supervisor, Davis.[8] The January 28, 2019, note stated only "Dennis Billups is currently under my medical care and may not return to [work].  Please excuse Dennis Billups from 1/28/2019 – 2/6/2019.[9]  The February 6, 2019, note stated that Billups was "a current patient under my care.  Patient is being evaluated for a medical condition. Patient is excused from reporting to the work site until cleared by me" and that Billups "needs to be allowed to telecommute to work 1 to 2 times a week."[10] In his deposition testimony, Billups explained that Dr. Whitehead was

---

[4] Id. at 3.
[5] Id. Billups cites the affidavit of Dawn Hughes-Morris who was the Human Resource Director and first level supervisor for Billups and Davis at the time. ECF No. 26-18, at 2. She explains that COOP was implemented because a tornado severely damaged several work buildings in February 2017. Id. Both she and Billups were deployed to the alternate work site in Bossier City, LA. Id. at 2-3. She reported that like all supervisors "we continued performing the duties of our position." Id.  at 3. USDA argues these statements are immaterial.
[6] ECF No. 26-4, at 2; ECF No. 26-8.
[7] ECF No. 25-2, at 2. Records reflect the last day he physically reported for duty was December 10, 2018.  ECF. No. 25-8.
[8] ECF No. 25-2, at 2; ECF No. 25-6. Billups' medical condition is completely unidentified or described in this paperwork. ECF No. 25-6; ECF 25-7.
[9] ECF No. 25-6.
[10] ECF No. 25-7.

requesting that Billups be allowed to telecommute one to two times a week and be excused from work for the other three to four days per week.[11]

On March 6, 2019, Billups' supervisor Shandon Davis sent Billups a letter acknowledging receipt of Dr. Whitehead's letters and reporting that the documentation was insufficient.[12] The letter noted Dr. Whitehead's recommendation that Billups be allowed to telecommute to work one to two times a week.[13] The letter listed out five options for Mr. Billups: return to duty, request a reasonable accommodation, apply for disability retirement, apply for leave under the Family and Medical Leave Act of 1993 (FMLA), or resign.[14] The "return to duty" option included a request that Billups provide a statement from his medical care provider as to whether Billups is able to perform the essential duties of his job on a full time basis and, if not released to full duty, a request that he submit no later than March 21, 2019, medical information regarding the nature, severity, and duration of his condition with an expected date of full or partial recovery, the activities that his condition limits, and the extent to which the condition limits his ability to perform the full duties of his position.[15] The "reasonable accommodation" option included the instruction that his request list all accommodations that would be necessary in order to perform the duties of his position and a statement of the risk associated with each accommodation.[16] It further instructed that he submit this information by mail or email to Jenna Shaner, Departmental Management Reasonable Accommodation Coordinator ("RAC").[17]

---

[11] ECF No. 25-19, at 7. The paperwork does not reflect what Dr. Whitehead intended with regard to the three to four days a week Billups would not be teleworking.
[12] ECF No. 25-8, at 1.
[13] Id.
[14] Id.
[15] Id.
[16] Id.
[17] Id. at 1-2.

On March 21, 2019, Billups first contacted Shaner regarding his accommodation request.[18] Attached to his email was a note from his treating physician, Dr. Whitehead, dated March 19, 2019.[19] On March 22, 2019, RAC Shaner responded asking Billups to resend Dr. Whitehead's March 19, 2019, medical note.[20] Billups responded and resent the document on the same day.[21] In the medical note, Dr. Whitehead reported that he had referred Billups for additional neurological evaluation.[22] He stated that Billups was capable of performing the duties of his position, but he opined that Mr. Billups should limit his work hours and not commute back and forth to his normal place of work "until a complete neurological assessment can be performed."[23] He cited back to the "accommodation" identified in the February 6, 2019, note and stated it was the "preferred accommodation."[24]

By letter dated March 28, 2019, Davis notified Billups that he was being charged as Absent Without Leave ("AWOL") for the pay period running from March 18, 2019, through March 29, 2019, because he had not submitted additional medical documentation by March 21, 2019, as required by the March 6, 2019, letter.[25]

Meanwhile, Shaner responded to Billups' March 22 email on April 9, 2019, stating that the medical documentation was insufficient to determine his disability.[26] She asked that Billups have his medical care provider complete an attached form or write a note that addressed each question on the form.[27] She also asked that Billups respond to a series of questions (such as, what accommodation(s)

---

[18] ECF No. 25-2, at 4.
[19] Id.
[20] Id.
[21] Id.
[22] ECF No. 25-17, at 1.
[23] Id.
[24] Id.
[25] ECF No. 26-11, at 5.
[26] ECF No. 25-15, at 3.
[27] Id.

do you think will help you?).[28] She further stated that "[i]f you are requesting a temporary accommodation until a further assessment is made, that is something you can work out with your supervisor as well."[29]

Billups responded the same day stating that he was confused as to whether he was supposed to answer the questions in the email and his physician was supposed to separately answer the questions in the form.[30] He also expressed confusion about whether his physician was supposed to fill out the form without the benefit of the pending evaluation from the specialist to which Billups had been referred.[31] He also reported that he did not believe Shaner's request was consistent with USDA policy.[32]

On April 17, 2019, Billups' supervisor, Davis, sent Billups a second letter referencing the previously sent March 6, 2019, letter and again stating that the January 28, 2019, and February 6, 2019, medical notes were insufficient.[33] The letter cited and attached the Attendance and Leave Policy, quoting the section providing that a supervisor may request a medical certificate or more detailed medical documentation.[34] The letter stated that "[i]n an effort to make a determination regarding the appropriate course of action, and your suitability for duty, the Agency is requesting medical documentation accordingly."[35] It stated further that "[t]he purpose of this request will also determine the basis for any conclusion that restrictions or accommodations are warranted, or may not be warranted, and an opinion of how the medical condition impacts the performance of your duties."[36]

---

[28] Id.
[29] Id.
[30] Id.
[31] Id.
[32] Id.
[33] ECF No. 25-9, at 1.
[34] Id.
[35] Id.
[36] Id.

On April 30, 2019, Billups emailed Davis (his immediate supervisor) and two other supervisors.[37] He reported that, "[a]s stated in [his] previous medical statement," he had completed his April 19, 2019, neurology appointment and was scheduled for an MRI, which was completed on April 25, 2019.[38] He reported that the results of the MRI had not yet been provided to his primary care physician, who would be the one to provide the documentation requested on April 17, 2019.[39] He asked for an extension of time to provide the documentation.[40] He stated that he had concerns about the HR office maintaining confidential and sensitive information and reported that his medical information was being provided as part of an "Accommodation Request."[41] He requested that it be provided "directly to Jenna Shaner, USDA RA Coordinator, for evaluation and coordination with the designated point of contacts, as appropriate."[42]

Davis responded to Billups' April 30, 2019, email on May 6, 2019, via letter.[43] Davis granted the requested extension and stated that the final deadline for documentation was May 16, 2019.[44] The letter explained that if Billups was applying for any of the options outlined in the March 6 letter (including a reasonable accommodation), he was "still required to adhere to the Agency leave requesting procedures."[45] The letter also reminded Billups that he must communicate his request for leave and provide supporting documentation through his immediate supervisor.[46]

On or about May 7, 2019, Davis received the medical certification form completed by Dr. Whitehead.[47] Dr. Whitehead reported that Billups had been diagnosed with chronic ischemic

---

[37] ECF No. 25-2, at 3.
[38] ECF No. 25-10, at 1.
[39] Id.
[40] Id.
[41] Id.
[42] Id.
[43] ECF No. 25-2, at 3.
[44] ECF No. 25-11, at 1.
[45] Id.  at 2.
[46] Id.
[47] ECF No. 25-2, at 3.

microangiopathy and that he was experiencing a chronic worsening memory impairment.[48] He reported that given the worsening memory issues, Billups should use caution when driving because his condition could increase his risk for sleeping while driving.[49] He certified that Billups was partially medically incapacitated, but did not provide a start or end date.[50] He certified that Billups was able to work eight hours per day five days per week.[51] He advised that Billups be allowed to "telecommute to work unless memory issues worsen to the point of inability to perform job" and advised against Billups operating a motor vehicle.[52]

On May 8, 2019, Shaner responded by email to Billups' email of April 9, apologizing for her delay.[53] She explained that her questions in the email were to confirm what Billups was requesting in his own terms and that his physician should complete the form.[54] She stated that the documentation she had received was unclear as to whether the physician was recommending an accommodation in the form of liberal granting of leave or telework.[55] She noted that she had not been provided with the February 6, 2019, medical note referenced in the medical documentation she received.[56] Billups maintains that he did not receive this May 8 email because he had stopped checking his work email.[57] Billups never responded directly to the May 8 email.[58] Billups' supervisors did not forward Dr. Whitehead's May 7, 2019, medical certification to Shaner.[59] Shaner

---

[48] ECF No. 25-12, at 2.
[49] Id.
[50] Id. at 3.
[51] Id.
[52] Id. at 4.
[53] ECF No. 25-15, at 1.
[54] Id.
[55] Id.
[56] Id.
[57] ECF No. 29-1, at 6.
[58] ECF No. 25-2, at 5. Billups takes the position that because his April 19, 2019, email requested that medical documentation be forwarded to Shaner, he did provide follow up. The USDA points out—and Billups does not contest—that the medical certification form sent by Davis and the form sent by Shaner were different. ECF No. 25-2, at 4.
[59] ECF No. 26-4, at 10.

never followed up with Billups after her May 8 email.[60]  Billups never corresponded with Shaner again after his April 9, 2019, email to her.[61]

On September 24, 2019, Davis sent Billups another letter reporting that there was a critical need for his position to be occupied by him functioning at the full performance level and onsite at his duty location.[62] It noted that he had been out of the office for over nine months and stated that "[w]e are now at a critical point of your longtime absence from duty."[63] The letter requested that Davis provide an updated medical certification.[64]

On or about October 5, 2019, Davis received Dr. Whitehead's updated medical certification form.[65] Dr. Whitehead reported that Davis' progress was good.[66] Dr. Whitehead again advised caution when driving given "worsening memory issues."[67] He advised that Billups be allowed to "telecommute to work unless memory issues worsen to the point of inability to perform job" and advised against operating a motor vehicle.[68] He again certified that Billups was partially medically incapacitated and that he could work eight-hour days, five days a week.[69] He added that "[f]ollowing completed evaluation by neurology, a final determination could be made in 60 days for return to full time."[70]

---

[60] Id. at 13.
[61] Billups Depo., ECF No. 25-19, at 12. In response to Request for Admission 45, Billups denied in part that he never communicated or responded to Shaner's request for additional information, however, he only does so on the basis that he claims he did not receive Shaner's May 8, 2019, email and that he asked Davis to forward documentation to Shaner. ECF No. 25-16, at 9.
[62] ECF No. 25-13, at 1.
[63] Id. at 2.
[64] Id.
[65] ECF No. 25-2, at 3.
[66] ECF No. 25-14, at 2.
[67] Id.
[68] Id. at 3.
[69] ECF No. 26-6, at 9.
[70] ECF No. 25-14, at 3.

Billups retired on December 31, 2019.[71] During the course of the interactions described above, the USDA never communicated to Billups that he was being denied an accommodation.[72] Nor did the USDA affirmatively communicate that the approval of his sick leave amounted to a reasonable accommodation.[73] Billups was paid sick leave during the entire period from December 2018 through December 31, 2019, except for the pay period in March 2019.[74]

Billups filed an EEO Complaint on February 24, 2020.[75] He complained that management had failed to provide him with a decision on his accommodation request, that he was forced to use sick leave although he was medically approved to telework, and that he was prevented from teleworking.[76]

On October 21, 2020, the Director of the Conflicts Complaints Division, Office of the Assistant Secretary of Civil Rights, USDA, sent Billups a letter acknowledging receipt of testimony in which he requested his EEO Complaint be amended and reporting that it was amending his EEO Complaint to include a claim for constructive discharge.[77] On October 23, 2020, Billups sent an email stating that he was not alleging constructive discharge and that he did not agree to any proposed amendment to his allegation of discrimination.[78] He requested that the USDA proceed with processing his complaint as originally filed.[79] In his sworn testimony during the administrative proceedings on October 11, 2021, he confirmed that he was no longer alleging a constructive discharge claim for allegedly being forced to retire from his position.[80]

---

[71] ECF No. 25-16, at 9.
[72] ECF No. 25-2. Billups disputes this but presents no evidence to support his position.
[73] ECF No. 26-4, at 2. The USDA disputes this but presents no evidence to support its position.
[74] ECF No. 29-1, at 7.
[75] ECF No. 30-3.
[76] Id. at 1-2.
[77] ECF No. 30-2.
[78] ECF No. 30-4.
[79] Id.
[80] ECF No. 30-5, at 3.

On July 13, 2022, the administrative law judge denied Billups' motion for summary judgment and granted the agency's motion for summary judgment.[81] Billups filed an appeal with the Equal Employment Opportunity Commission.[82] The EEOC denied Billups' request for reconsideration on March 20, 2023.[83]

Billups filed the present lawsuit against Thomas Vilsack, Secretary of the USDA, on June 16, 2023, alleging employment discrimination in violation of Section 502 of the Rehabilitation Act of 1983 as amended and the Americans with Disabilities Act as amended ("ADA"). He alleges that the USDA violated these laws by failing to participate in good faith in the interactive process and/or provide the requested or an alternate temporary reasonable accommodation. He alleges that the discrimination resulted in his retirement and constructive discharge. He does not allege that he was treated differently than any other USDA employees or refer in any way to a disparate impact claim. He seeks to be returned to his previous position of record with the requested accommodation, back pay, restoration of the leave he used during the period of alleged discrimination, and non-pecuniary damages because he alleges that the USDA did not operate in good faith and subjected him to an extended period of severe emotional stress.

The parties consented to proceed before the undersigned magistrate judge. The bench trial is scheduled to begin on July 22, 2024. Both the USDA and Billups have filed motions for summary judgment.

---

[81] ECF No. 1, at 14; ECF No. 6, at 5.
[82] ECF No. 1, at 14; ECF No. 6, at 5.
[83] ECF No. 1, at 14; ECF No. 6, at 5.

<u>Law and Analysis</u>

*1.   Standard for Summary Judgment*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." <u>Engstrom v. First Nat. Bank of Eagle Lake</u>, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." <u>Daniels v. City of Arlington, Tex.</u>, 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Antoine v. First Student, Inc.</u>, 713 F.3d 824, 830 (5th Cir. 2013) (quoting <u>Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994).

"Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." <u>Armstrong v. City of Dallas</u>,

997 F.2d 62, 67 (5th Cir. 1993). Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of her case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Additionally, the Fifth Circuit Court of Appeals has recognized that in non-jury cases "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts." Lyles v. Medtronic Sofamor Danek, USA, Inc., 871 F.3d 305, 311 (5th Cir. 2017) (quoting Matter of Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991). "Therefore, 'at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'" Id. (quoting Placid Oil, 932 F.2d at 398).

### 2. *Waiver of Claims and Failure to Exhaust*

Billups purports to assert claims under the ADA and the Rehabilitation Act. But, because the ADA does not allow claims against the federal government, only his Rehabilitation Act claims may be viable. See Smith v. Potter, 400 F. App'x 806, 811 (5th Cir. 2010).

Pursuant to the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States  . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). The Rehabilitation Act is interpreted using the same standards as the ADA. See Kemp v. Holder, 610 F.3d 231, 234 (5th Cir. 2010). Similarly, claims under the Rehabilitation Act are subject to the same

administrative exhaustion requirements as claims under Title VII of the Civil Rights Act of 1964. Smith, 400 F. App'x at 811 (5th Cir. 2010). Thus, "as a precondition to seeking this judicial relief . . . complaining employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. Pacheco v. Mineta, 448 F.3d 783, 788 (5th Cir. 2006).

Exhaustion principles require that the scope of the "complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Carey v. State of Louisiana, No. CIV.A. 00-2657, 2001 WL 1548962, at *5 (E.D. La. Dec. 5, 2001) (quoting Thomas v. Texas Dep't of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000)). A claim alleging one theory of discrimination must be dismissed where the EEOC charge only alleged a different theory of discrimination. Thomas v. Texas Dep't of Crim. Just., 220 F.3d 389, 395 (5th Cir. 2000) (reversing the district court's ruling allowing plaintiff to assert a race discrimination claim when the EEOC charge had only alleged a gender discrimination claim). For example, where an employee's EEOC charge alleged discrimination on the basis of race and national origin and failed to mention any discrete sexually discriminatory acts or any pattern of discriminatory acts, a court has found that she failed to exhaust her administrative remedies as to the hostile work environment, retaliation, and sex discrimination claims asserted in her lawsuit. Cargo v. Kansas City S., No. CIV.A. 05-2010, 2009 WL 3010824, at *4 (W.D. La. Sept. 16, 2009). Similarly, where a plaintiff's EEOC charge asserted that she had been discriminated against because of her sex but did not allege any facts to support a claim for sexual harassment or retaliation for reporting sexual harassment, the court found she had failed to exhaust her administrative remedies as to her claim of sexual harassment and retaliation for complaining of

such harassment. <u>Ellzey v. Cath. Charities Archdiocese of New Orleans</u>, 833 F. Supp. 2d 595, 602 (E.D. La. 2011).

       a.   *Constructive Discharge*

The USDA argues that Billups waived his constructive discharge claim because during the administrative proceedings, he specifically requested that no constructive discharge claim be included with his complaint and confirmed that he was not pursuing a constructive discharge claim in his sworn testimony. Billups argues that the EEOC Amended Acceptance Letter dated October 21, 2020, accepted his constructive discharge claim. He argues that the cited testimony is incomplete.

The Court finds that Billups waived his constructive discharge claim during the administrative proceedings. His email and testimony withdrawing the constructive discharge claim occurred ***after*** the October 21, 2020, Amended Acceptance Letter and clearly withdrew the constructive discharge claim referred to therein. By withdrawing this claim from the administrative proceedings, he has not exhausted his administrative remedies as to any constructive discharge claim. Billups' constructive discharge claim must be dismissed for failure to exhaust administrative remedies.

       b.   *Disparate Treatment*

Billups' lawsuit does not claim to assert a disparate treatment claim. He does not allege that he was treated differently than other similarly situated workers outside of his protected class in either his federal Complaint or his EEO Complaint. In support of his motion for summary judgment, he now references two non-disabled co-workers—Stephen Deep and Jamar Gailes—who were allowed to telework. But he did not allege any facts as to these individuals in his federal Complaint or his EEO Complaint. Not only is any disability discrimination claim based on

disparate treatment outside the scope of the pleadings, but Billups has also failed to exhaust his administrative remedies to as to any such claim. The EEO Complaint clearly focuses on his allegation that the USDA failed to offer him a reasonable accommodation and failed to participate in the interactive process. A disparate treatment claim could not reasonably be expected to grow out of his EEO Complaint. Accordingly, Billups' disparate treatment claim must be dismissed for failure to exhaust administrative remedies.

### c.  Adverse Employment Action – AWOL Status

Billups also argues that when the USDA placed him on AWOL status and did not pay him for a two-week pay period in March 2019, this amounted to an adverse employment action. He argues that Davis should have allowed him 30 days to provide medical documentation before charging him AWOL.[84] He does not explain what type of claim this could be relevant to (e.g, disparate impact discrimination, retaliation). In any event, as the USDA argues, Billups did not raise any claim for disparate impact or retaliation arising out of having been placed on AWOL status. His EEO Complaint contains no suggestion that he was raising any issue with this purported adverse employment action. Accordingly, any claim arising out of being placed on AWOL status must be dismissed for failure to exhaust administrative remedies.

---

[84] Pursuant to the regulations:

> An employee must provide administratively acceptable evidence or medical certification for a request for sick leave no later than 15 calendar days after the date the agency requests such medical certification. If it is not practicable under the particular circumstances to provide the requested evidence or medical certification within 15 calendar days after the date requested by the agency despite the employee's diligent, good faith efforts, the employee must provide the evidence or medical certification within a reasonable period of time under the circumstances involved, but no later than 30 calendar days after the date the agency requests such documentation.

5 C.F.R. § 630.405.

3. *Rehabilitation Act – Failure to Provide a Reasonable Accommodation*

Actionable discrimination based on disability "includes failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability unless such covered entity can demonstrate that the accommodation would impose an undue hardship.'" Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C.A. § 12112 (b)(5)(A)). "To prevail on a failure-to-accommodate claim, the plaintiff must show (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." Thompson v. Microsoft Corp., 2 F.4th 460, 467 (5th Cir. 2021) (quoting Moss v. Harris Cnty. Constable Precinct One, 851 F.3d 413, 417 (5th Cir. 2017)). To establish that he is a "qualified individual" plaintiff must show "1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job." Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996).

Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C.A. § 12111(9). "Although taking leave that is limited in duration may be a reasonable accommodation to enable an employee to perform the essential functions of the job upon return, taking leave without a specified date to return or . . . with the intent of never returning is not a reasonable accommodation." Moss, 851 F.3d at 419; see Dockery v. N. Shore

Med. Ctr., 909 F. Supp. 1550, 1560 (S.D. Fla. 1995) ("[T]he law clearly does not envision forcing employers to grant even a year's *unpaid* leave of absence.").

The USDA argues that Billups is not a "qualified individual" because the accommodation of being provided with indefinite leave is not a reasonable accommodation. Additionally, the USDA argues that given Dr. Whitehead's medical certification that Billups had worsening memory issues, Billups was unable to perform his job. It notes that Billups never provided follow up documentation regarding his neurological appointments.

The USDA cites Shores v. United Continental Holdings, Inc., where the Southern District of Texas granted summary judgment for the defendant. No. CV H-13-2745, 2016 WL 7742814, at *11 (S.D. Tex. July 19, 2016), report and recommendation adopted, No. CV H-13-2745, 2016 WL 5394763 (S.D. Tex. Sept. 27, 2016). There, the plaintiff argued she was "a qualified individual because she could have performed her job on some days if she were granted unlimited sick leave for those days when she was unable to work." Id. The court rejected this argument, finding that such an "accommodation" was "the essence of indefinite, intermittent leave that courts have held to be not available as a reasonable accommodation under the ADA." Id. The USDA argues that the accommodation proposed by Billups here—teleworking one to two days a week and using sick leave the remainder of the week—similarly shows that he is not qualified to perform his job functions. The USDA submits that his situational or unscheduled telework agreement required his physical presence on a daily basis. The USDA cites Credeur v. Louisiana through Office of Attorney General, where the Fifth Circuit held that "'[a]n employee's unsupported testimony that she could perform her job functions from home' does not create a genuine dispute of fact to preclude summary judgment." 860 F.3d 785, 793 (5th Cir. 2017) (quoting E.E.O.C. v. Ford Motor

Co., 782 F.3d 753, 763–64 (6th Cir. 2015)). It argues that Billups has not shown that he is a qualified individual.

Billups argues that he was a qualified individual. He argues that his job at USDA required him to provide personnel related services to a customer base of several thousands and that the primary communications were via telephone and email. He submits that Dr. Whitehead's medical documentation repeatedly stated that Billups could telework. He argues that his sick leave requests were not requests for indefinite leave because he was willing and able to work as documented by Dr. Whitehead. Billups argues that his request for telework was reasonable because he performed telework for approximately nine months while deployed during an emergency situation. He submits that the USDA has not articulated any issue with his work performance. He argues that the reason he did not submit additional documentation regarding his neurological appointments is because the USDA never requested it.

Dr. Whitehead's note of February 2019 recommends that Billups be allowed to telework one or two days a week. His note of March 19, 2019, reports that pending further neurological evaluation, Billups should limit his work hours and not commute to the normal workplace.  During his deposition, Billups represented that it was Dr. Whitehead's intention that he telecommute one to two days a week and be granted sick leave the remainder of the week. The USDA and the Court in Shores state that an indefinite accommodation of this type is not a reasonable accommodation. Here, a decision on that issue need not be reached for the reasons that follow.

Billups seems to argue in both his motion for summary judgment and his opposition to the USDA's motion that, in fact, Dr. Whitehead later opined that Billups be allowed to temporarily telework full time. The Court finds that Dr. Whitehead's notes in May and October 2019 could be read as making such a recommendation, but the notes also suggest that Billups would *not* be able

to perform his duties even with such an accommodation. In his May 7, 2019, report, Dr. Whitehead stated that Billups was "partially medically incapacitated" and able to work eight-hour days, five days a week.[85]  But he also noted "worsening memory issues," causing Dr. Whitehead to "advise telecommute if his memory allows for this until cleared by neurology."[86] Particularly considering Dr. Whitehead's previous recommendation in March 2019 that Billups be allowed to telework one to two days a week and take leave the remaining days, and considering Dr. Whitehead's caveat that Billups' memory might worsen to the point of inability to perform the job, the recommendation is ambiguous and leaves questions as to whether Billups would have been able to perform the essential functions of his job if he had been allowed to telework.

Further casting doubt on whether Billups was able to perform the essential functions of his job and return to work full time, via telework or otherwise, are Dr. Whitehead's additional statements in his October 5, 2019, note.  There, he reports that Billups has "most recently been experiencing chronic worsening memory impairment," "will need to be worked up more by neurology as he is having worsening memory issues," and should therefore use caution when driving.[87] He added that Billups "[m]ay need to avoid driving altogether, consider telecommute or LOA [leave of absence] from work if memory skills worsen impacting daily life." [88]

> At this point I would advise given potentially worsening memory issues with current evaluation underway by neurology that Dennis be allowed to telecommute to work unless memory issues worsen to the point of inability to perform job. Would advise against him operating a motor vehicle until cleared by neurology. Following completed evaluation by neurology, a final determination could be made in 60 days for return to full time.[89]

---

[85] ECF 25-12, at 3.
[86] Id.
[87] ECF 25-14, at 2.
[88] Id.
[89] Id. at 3.

The USDA does not address the possibility that Dr. Whitehead was recommending Billups return to work full time on a telework basis. But the USDA does argue that Billups has not shown he would be capable of performing his job in light of the reports of his memory issues and his failure to submit his neurology evaluations.

On the evidence of record, it is unclear whether Billups was a qualified individual with a disability because the medical documentation leaves numerous questions as to his ability to work. Had the interactive process played out, the parties would have had to address the question of Billups' ability to perform his essential job functions while teleworking and whether part time or full time teleworking was a reasonable accommodation.  But the interactive process did not play out. Even if Billups was found to be a qualified individual with a disability able to perform his job with an available reasonable accommodation, the USDA cannot bear liability for failing to provide a reasonable accommodation if Billups is responsible for the breakdown in the interactive process. See Gordon v. Acosta Sales & Mktg., Inc., 622 F. App'x 426, 430 (5th Cir. 2015) ("[W]e need not address whether [the employer] provided a reasonable accommodation, because we conclude that [the employee's] unilateral withdrawal from the interactive process is fatal to his claim.").That issue is addressed below.[90]

---

[90] In the alternative, the USDA argues that by providing Billups with one year of paid sick leave, it provided him with a more than reasonable accommodation. Billups counters that he had accrued and was entitled to the sick leave taken. He cites EEOC policy advising that "[i]f an employer receives a request for leave for reasons related to a disability and the leave falls within the employer's existing leave policy, it should treat the employee requesting the leave same as an employee who requests leave for reasons unrelated to a disability." U.S. Equal Employment Opportunity Commission, Employer-Provided Leave and the Americans with Disabilities Act, EEOC-NVTA-2016-1 (May 9, 2016), https://www.eeoc.gov/laws/guidance/employer-provided-leave-and-americans-disabilities-act. That same guidance provides that:

> When an employee requests leave, or additional leave, for a medical condition, the employer must treat the request as one for a reasonable accommodation under the ADA. However, if the request for leave can be addressed by an employer's leave program, the FMLA (or a similar state or local law), or the workers' compensation program, the employer may provide leave under those programs. But, if the leave cannot be granted under any other program, then an employer should promptly engage in an **"interactive process"** with the employee -- a process designed to enable the employer to obtain relevant information to determine the feasibility of providing the leave as a reasonable accommodation without causing an undue hardship.[90]

4.  *Rehabilitation Act – Failure to Participate in Good Faith in the Interactive Process*

"Once an accommodation is requested, an employer must engage in the 'interactive process,' or a flexible dialogue, with the employee with the goal of finding an appropriate accommodation for the limitation." Delaval v. PTech Drilling Tubulars, L.L.C., 824 F.3d 476, 481 (5th Cir. 2016). For example, in Thompson v. Microsoft Corp., the court found the employer appropriately engaged in good faith where it worked with the employee "over several months, explaining accommodations it deemed unreasonable, asking [him] to respond with alternate accommodations, and offering to consult directly with [his] doctors." 2 F.4th 460, 469 (5th Cir. 2021). Importantly, the process is bilateral: "[a]n employer that fails to engage in the interactive process in good faith violates the ADA," but the employer is not liable where the employee is responsible for the breakdown in the interactive process. Delaval, 824 F.3d at 481; see Loulseged v. Akzo Nobel Inc., 178 F.3d 731, 735 (5th Cir. 1999).

Thus,

courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

_____

While the Court agrees that an employer will not typically be required to provide over a year's paid leave to an employee as a "reasonable" accommodation, see Moss, 851 F.3d at 419; Dockery, 909 F. Supp. at 1560, it may choose to do so.  Here, however, there is no evidence that the USDA considered Billups' sick leave to be a reasonable accommodation at the time leave was being granted. At no time did Billups request sick leave without telework as an accommodation. Moreover, the USDA's argument is contrary to its position that Billups abandoned the reasonable accommodation process by failing to submit medical documentation directly to Shaner. The USDA cannot escape liability for failing to provide a reasonable accommodation because it allowed Billups a year of sick leave pursuant to its sick leave policy.

Hebert v. Ascension Par. Sch. Bd., 396 F. Supp. 3d 686, 705 (M.D. La. 2019) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999).

For example, in Loulseged, the employee quit after the employer offered accommodations different from those she had previously been allowed. 178 F.3d at 733. After trial, the district court granted the defendant's motion for judgment as a matter of law and the Fifth Circuit affirmed, finding that no reasonable jury could find the employer at fault for the breakdown in the interactive process. Id. at 732. The court of appeals found that even though she would not have faced the problematic job duties immediately, the employee quit without discussing or raising concerns with the employer's proposals and without waiting to see if further proposals or discussion developed. Id. at 733, 740. The court rejected the employee's attempt to characterize the employer's actions as unilateral, noting her "deafening silence" when the employer's proposals were presented and adding that "[o]ne cannot negotiate with a brick wall." Id. at 737. Noting that "[a] party that fails to communicate, by way of initiation *or response,* may . . . be acting in bad faith," the court concluded that the process broke down because the employee "stayed silent, and quit." Id. at 738 (quoting Beck v. Univ. of Wisconsin Bd. of Regents, 75 F.3d 1130, 1135 (7th Cir. 1996)); see Griffin v. United Parcel Serv., Inc., 661 F.3d 216, 225 (5th Cir. 2011) (finding no reasonable juror could conclude that the employer was unwilling to participate in the interactive process and affirming summary judgment for the employer where the employee retired on his own accord rather than providing additional information about his illness or requesting reconsideration when the employer notified him that based on the information provided he was not entitled to the requested accommodation); see also Equal Emp. Opportunity Comm'n v. Methodist Hosps. of Dallas, 62 F.4th 938, 951 (5th Cir. 2023) (finding no reasonable jury could find that the employer was unwilling to participate in the interactive process where the employee did not respond to the

employer's two letters offering her unpaid time off as an accommodation); Gordon, 622 F. App'x at 430 (finding no reasonable jury could find that the employee was not responsible for the breakdown in the interactive process where the employee resigned the same day the employer offered an accommodation rather than responding to the offer).

Additionally, where there is no evidence that a reasonable accommodation is feasible, an employer's failure to engage in the interactive process does not result in a finding of liability. [91] Silva v. City of Hidalgo, Tex., 575 F. App'x 419, 424 & n. 3 (5th Cir. 2014).

The dispute here comes down to whether Billups abandoned the interactive process. It is uncontroverted that he failed to follow up directly with Shaner for almost nine months after his April 9, 2019, email to her, through the time of his self-pronounced retirement, on December 31, 2019.[92] The evidence shows that Billups knew at that time that Shaner was the individual with whom he needed to communicate to request a reasonable accommodation.[93] Even if he had not realized that the medical forms sent by Davis and Shaner were different (a position he has not taken), he had observed that Shaner had also sent a list of questions about the requested accommodation because he asked Shaner about the questions. Yet he never responded. Nor did he have his physician respond to these questions about the requested accommodation. The last affirmative step Billups took towards pursuing a reasonable accommodation was requesting that his supervisor forward unspecified medical documentation to her, and even that was in April 2019, over one half year before he chose to take retirement.[94] He made no attempt to determine through

---

[91] "[W]hen an employer's unwillingness to engage in a good faith interactive process *leads to* a failure to reasonably accommodate an employee, the employer violates the ADA." Loulseged, 178 F.3d at 736. Where the accommodation needed by the employee is not feasible for the employer to provide, the employer's unwillingness to engage did not lead to the failure to reasonably accommodate. Silva, 575 F. App'x at 424 & n. 3.

[92] ECF No. 25-19, at 12.

[93] Indeed, Billups insisted that his medical documentation and accommodation request be handled by Shaner because "[i]t should only be handled and reviewed by individuals who are qualified to assist in interpreting it for the purpose of making administrative decisions." See Apr. 30, 2019, Email, ECF No. 25-10, at 1.

[94] Id.

Shaner or Davis or anyone else whether Shaner had received the information she needed—even when week after week, he was not authorized to telework.

Billups now relies on the text of the USDA policies instructing that reasonable accommodation requests be made to the employee's immediate supervisor. But once directed to provide his request to Shaner by his supervisor, as occurred on March 6, 2019,[95] Billups cannot be excused for failing to follow the instructions provided directly to him.   He insists that he did not receive Shaner's May 9 email posing reasonable questions about his requested accommodation, but the document shows that it was sent to his email address at which Shaner had previously reached him.  He defends his failure to send any other documentation because he "wasn't asked for it."[96]

Critical to who should bear the fault for the failure here is the fact that ultimately, Billups retired. He claims this was because he was not granted the requested accommodation. But from May 2019 on and culminating in his retirement, Billups clearly abandoned the interactive process. In his own motion for summary judgment, he faults Davis repeatedly:

- "Davis failed to acknowledge receipt of Dr. Whiteheads May 7, 2019, and October 5, 2019, medical documentation for reasonable accommodation purposes."[97]
- "Davis did not engage in the interactive process to determine if the telework request was reasonable and did not offer any alternative accommodation."[98]

---

[95] ECF No. 25-8.

[96] In his deposition, Billups was asked whether he had forwarded the neurological evaluation the doctor referenced in his March letter.  He did not "because they never requested it."  ECF No. 25-19, at 16.  "If they wanted anything other than that [the documentation identified in Shaner's letter] they could have reached out to me as part of the interactive process, and we could have had a discussion on what they specifically wanted or needed.  They never did that." Id. at 17.  He saw a primary care doctor, a psychologist, and a second psychologist who did an evaluation, but provided no records of this to the USDA. He testified, "again, no. I responded to the information that was requested from Davis and Shaner in the document request that they provided to me.  … I provided to them what they requested of me.  If they wanted more of me, they should have specifically requested that"  Id. at 19. Not only does this gamesmanship ignore the broad language of the requests he received from both Davis and Shaner, but of all people, Billups, a supervisory human resource specialist, with decades of human resources experience, would and should know that he should have provided any additional medical documentation he believed supported his request for sick leave and/or a reasonable accommodation.

[97] ECF No. 26-3, at 12.

[98] Id.

- "Davis unwillingness to engage in any way in a good faith interactive process led directly to Defendant's failure to accommodate plaintiff's known disability in violation of the Rehabilitation Act."[99]
- "[P]laintiff made five (5) separate request for the accommodation of telework. For each of the five requests, plaintiff's first level supervisor, did not engage plaintiff in the interactive process ads prescribed and required . . . ." [100]

But Billups knew to whom he needed to report and provide information—Shaner.[101]  He knew to whom he could turn for a discussion or a decision—Shaner.  He even wanted Shaner to be in charge of the process as she was qualified.[102]

Given the sporadic, vague, often conflicting, and always tentative medical documentation they received, the USDA was never provided with adequate information to determine whether Billups was a qualified individual with a disability, whether a reasonable accommodation was available, or what it would entail. And most of this information was not even provided by Billups to the person in charge of handling his reasonable accommodation request—Shaner. Had Billups been denied a reasonable accommodation or terminated under these facts, where his medical situation was so unclear, the Court might be critical of the USDA for not first delving deeper to see if a solution was available that would have enabled Billups to keep working.  But that is not what happened here. For many months, the USDA communicated, sent policies, options, forms, follow up letters, requested updates, and posed specific questions regarding accommodations sought.  It let Billups know his absence was a hardship but nonetheless provided extensions for him to get documentation and make follow up doctor appointments.[103]  It let him remain on paid

---

[99] Id.
[100] Id. at 15.
[101] Medical Inquiry letter of Mar. 6, 2019, ECF No. 25-8; Billups' Response to Request for Admission No. 7, ECF No. 25-16, at 2.
[102] Billups' Apr. 30, 2019, Email, ECF No. 25-10; Billups' Response to Request for Admission 22, ECF No. 25-16, at 5.
[103] Nor did the sparse and conflicting documentation received inspire any hope that return was actually feasible, with or without a reasonable accommodation, considering its ominous references to Billups having "most recently been experiencing chronic worsening memory impairment," "will need to be worked up more by neurology as he is having worsening memory issues," should therefore use caution when driving, and "[m]ay need to avoid driving altogether,

sick leave for almost 13 months.[104]  And then he retired.  Under these facts, the USDA was not required to do more to accommodate him. Like the employees in <u>Loulseged</u>, <u>Griffin</u>, and <u>Gordon</u>, Billups voluntarily terminated his employment rather than participating in the interactive process. By ignoring USDA's request for more information about appropriate and feasible accommodations, he prevented the USDA from "determine[ing] what specific accommodations [were] necessary." <u>Hebert</u>, 396 F.Supp.4d at 705 (quoting <u>Taylor</u>, 184 F.3d at 312). His unilateral termination of the process is fatal to his claim. <u>See</u> <u>Gordon</u>, 622 F. App'x at 430.

The Court finds that the evidence compels the conclusion that Billups abandoned the interactive process. No reasonable juror could find otherwise. As a result, the USDA cannot be liable for failing to provide him with a reasonable accommodation.

Conclusion

On the undisputed facts, the Court finds that Billups has waived and/or failed to exhaust his administrative remedies as to his claims for constructive discharge, disparate treatment, and any claim arising solely out of the two weeks Billups was charged AWOL and not paid. Accordingly, these claims must be dismissed. Although Billups may or may not have been a qualified individual, who may or may not have had a reasonable accommodation available to him, because he abandoned the interactive process, he cannot establish a claim for failure to accommodate or failure to engage in the interactive process. Accordingly, these claims must also be dismissed. Billups' motion for summary judgment is DENIED and the USDA's motion for summary judgment is GRANTED.

---

consider telecommute or LOA from work if memory skills worsen impacting daily life." Oct. 5, 2019, Note of Dr. Whitehead,  ECF No. 25-14.  These, of course, Billups sent to Davis, not Shaner.
[104] ECF No. 29-1, at 7.

New Orleans, Louisiana, this 2nd day of July, 2024.

Janis van Meerveld
United States Magistrate Judge